## DEVELLO W. ANDERSON v. S. LEE COOK.

*Fraudulent conveyances—Chattel mortgage—Evidence—Instructions to jury.*

1. The failure of a mortgagee of chattels to indorse payments on the mortgage, or a copy thereof, on file in the office of the township or city clerk, or to volunteer a statement of the amount unpaid to a creditor of the mortgagor who refuses to recognize the validity of the mortgage for any sum or to ask the amount due on the mortgage, will not void it as to creditors.

2. The failure of a mortgagee of a stock of liquors to foreclose the mortgage by advertisement, and his permitting the mortgagor to sell the liquors at private sale, and account to him for the proceeds, will not render the mortgage void as against an attaching creditor, but the mortgagee will be held liable to account for the surplus, if any, arising from such sales to those holding subsequent liens on the property.

3. A son mortgaged his stock of liquors to his father to secure an alleged indebtedness due the father, and soon afterwards gave his father a second mortgage to secure him for money which he had agreed to advance for the purpose of paying some of his son's creditors a percentage of their claims in full settle-

ment of the same. After the father had paid half of the sum secured by the second mortgage, the property was attached at the suit of one of the son's creditors. The father demanded the property of the sheriff, which demand was refused, and that officer, under instructions from the attaching creditor, refused to recognize the validity of the mortgages. The father replevied the property, and turned it over to his son, who continued to sell the same at private sale, and account to his father for the proceeds. On the trial of the replevin suit the jury found for the plaintiff, and that the value of the property was not equal to the amount secured by the first mortgage.

The court instructed the jury, among other things:

a—That their attention was directed entirely to the first mortgage, because, if it was fraudulent and void, the second mortgage, given and received to secure a compromise based and founded, in part at least, upon the supposed validity of the first mortgage, would also be void, and because, if the first mortgage was valid as to the other creditors, the plaintiff would be entitled to a verdict, even if the second mortgage was fraudulent and void.

b—That, if the first mortgage was valid when the property was demanded of the sheriff, neither that officer nor the plaintiff in the attachment could have been wronged or injured by coupling the second mortgage, even if fraudulent, with the first mortgage as the basis of such demand, it appearing that the first mortgage alone exceeded the appraised value of the mortgaged property, for the reason that a fraudulent intent which, from the very nature of things, cannot grow into a fraud in fact, injures no man, and affects no man's legal rights.

c—That it was not a fraud in and of itself alone, affecting this action, that the father, after the replevin, turned the goods back into the possession of his son; that the sheriff, acting under the direction of the attachment creditor, had exercised his option whether to recognize the mortgage, and levy subject to it, or deny its validity, and he had refused to recognize it at all; that, if he had levied subject to the mortgage, he could have held possession, and sold whatever interest the son had in the property over and above the mortgage, regardless of any intentions which the father might have had as to the further disposition of the property; that in levying regardless of the mortgage, and denying its validity, he became, if it was actually valid as to creditors, a wrong-doer from the beginning, acting under an illegal levy, and without a stand-

ing which would permit him to question the plaintiff's actions or motives.[1]

And it is held that there was no error in said instructions against the defendant, and that they were as favorable as he was entitled to.

Error to Ingham. (Person, J.) Argued January 5, 1894. Decided June 16, 1894.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

*R. A. Montgomery* and *Jason E. Nichols* (*Harmon, Colston, Goldsmith & Hoadley,* of counsel), for appellant.

*Mitchel, Hawley & Nesbitt,* for plaintiff.

GRANT, J. In 1888 the plaintiff's son opened a liquor saloon at Grand Ledge, and in 1890 he opened another in the city of Lansing. Plaintiff had at different times loaned his son various sums of money, aggregating $3,140. He lived at Saranac, and kept a blacksmith, wagon, and

---

[1] For cases involving the attachment of chattel-mortgaged property under How. Stat. § 7682, see:

1. *King v. Hubbell,* 42 Mich. 597, 604, holding:

*a*—That chattel-mortgaged property is attachable, because the statute makes it so; but that, unless the attaching creditor disputes the validity of the mortgage, the officer is under obligation to surrender possession to the mortgagee on demand, after his inventory and appraisal are completed.

*b*—That, after such attachment, the respective parties must each so assert and exercise their rights as not needlessly to injure the interests of the other, and any authority in the mortgagee to permit the mortgagor to go on and make sales in the usual course of business is terminated.

2. *Wilson v. Montague,* 57 Mich. 638, holding that the right to attach chattel-mortgaged property is expressly given by the statute; that it may be exercised at any time before the foreclosure of the mortgage (*Nelson v. Ferris,* 30 Mich. 497; *Cary v. Hewitt,* 26 Id. 228), and continues until redemption is cut off (*Haynes v. Leppig,* 40 Mich. 605); that it is only the right of redemption that can be taken (*Bayne v. Patterson,* 40 Mich. 659); that this leviable right pertains to the whole property, and is not apportionable (*Worthington v. Hanna,* 23 Mich. 534); and that the whole interest may be attached for the purpose of making and perfecting the levy thereunder, and may be held at least a sufficient time for that purpose.

carriage shop. About the time of the making of these loans he put the amounts and dates thereof on slips of paper, and kept them in a safe at his residence. These slips were produced on the trial. September 30, 1890, his son executed and delivered to him a chattel mortgage upon his stock of goods in Lansing for $3,412.55, which included the several loans, with interest thereon. Subsequently, Alexander Gordon, one of the son's creditors, proposed to him to settle his claim for 25 cents on the dollar, and told him that his other creditors would settle upon the same basis. Gordon and the son went to Saranac to see the plaintiff, who agreed to pay the 25 cents on the dollar to the creditors, provided he was secured by a mortgage upon the property. The compromise would amount to about $1,200. On December 11, 1890, the son executed another mortgage for this amount. Plaintiff at that time paid $262, and, before the attachment proceedings hereinafter referred to were commenced, had paid in all about $600. One Leo M. Frank, a creditor of the son, sued out

---

3. *Walker v. White*, 60 Mich. 428, holding that where a chattel mortgage is a valid security for firm debts, but not for the individual debt of one of the partners sought to be secured thereby, an attaching creditor should levy subject to the mortgage, which he can treat as void in so far as it attempts to secure the payment of the latter debt.

4. *Merrill v. Denton*, 73 Mich. 628, holding that replevin lies at once, and without a demand, in favor of a mortgagee against an officer who attaches the mortgaged property in defiance of the mortgage, which he claims to be void as against the attaching creditor.

5. *Hyde v. Shank*, 77 Mich. 517, holding that the waiver by the mortgagor of his right to the possession of the property until the maturity of the mortgage debt, and his consent that the mortgagee may take immediate possession, cannot affect the rights of an attaching creditor, who, if he regards the mortgage as valid, should attach subject to the rights of the mortgagee, and if he denies its validity as to creditors, and succeeds in showing that fact, the agreement as to possession will not affect that question.

6. *Rosenfield v. Case*, 87 Mich. 295, holding that the attachment of chattel-mortgaged property in opposition to the mortgage, and the refusal of the officer to admit the mortgagees to a joint possession, justifies them in demanding possession under the insecurity clause in their mortgage, whether the debt secured thereby is due or not due.

a writ of attachment upon the stock of goods, and gave
the defendant, Cook, the deputy-sheriff of the county, a
bond of indemnity.   Cook thereupon seized the property
covered by the chattel mortgages.   Plaintiff, through his
attorney, demanded possession of Cook, which was refused;
Cook, under instructions from Frank, refusing to recognize
the validity of the mortgages.   Thereupon plaintiff instituted
this action of replevin.   The mortgages were duly filed.
Prior to commencement of suit, plaintiff had been paid
upon the first mortgage $650.

Complaint is made of the instructions of the court, the
material parts of which are as follows:

"I shall direct your attention and consideration entirely
to the first and earlier mortgage,—the larger one,—which
bears date the 30th day of September, and purports to
have been given to secure the payment of $3,412.55, and
interest, as therein expressed.   I direct your attention
entirely to this first and earlier mortgage, because in my
judgment, if that is fraudulent and void, then the later
$1,200 mortgage, given and received to secure a compro-
mise which was based and founded, in part at least, upon
the supposed validity of the first mortgage, would also be
void; and, further, because in my judgment, if that first
and larger mortgage is valid as to the other creditors, then
the plaintiff would be entitled to a verdict in his favor,
even if the later mortgage was fraudulent and void.

"The verdict in this as in other actions of replevin
depends upon the facts and circumstances as they existed
at the commencement of the suit.   Up to the commence-
ment of the suit, the plaintiff had done nothing with this
first and larger mortgage except to file it in the clerk's
office, and to demand the goods by virtue of it.   These
were legitimate steps under a valid mortgage, and there-
fore, if it was valid when given, it was yet valid when
suit was commenced.   If it was voidable by creditors when
given, then it is yet voidable, and the plaintiff has no
standing in court.

"As I said, if this first and large mortgage was valid
when given, then it yet remained valid when the property
was demanded of Mr. Cook; and, if it was then valid,

100 MICH.—40.

neither Mr. Cook nor Mr. Frank, the plaintiff in the attachment, could have been wronged or injured by coupling a fraudulent mortgage with it as the basis of such demand, even if the second mortgage was fraudulent, because this first mortgage alone exceeded the appraised value of the goods, and, further, because a fraudulent intent which, from the very nature of things, cannot grow into a fraud in fact, injures no man, and affects no man's legal rights.

"Nor is it a fraud in and of itself alone, affecting this action, that the plaintiff, Anderson, after the replevin, turned the goods back into the possession of his son. The defendant officer, acting under the direction of the attachment creditor, exercised his option whether he recognized the mortgage, and levied subject to it, or denied the validity of the mortgage, and refused to recognize it at all. If he had levied subject to the mortgage, he could have held possession, and sold whatever interest George D. Anderson had in the property over and above the mortgage, regardless of any intention which the plaintiff may have had as to the further disposition of the property. In levying regardless of the mortgage, and denying its validity, he became, if it was actually valid as to creditors, a wrong-doer from the beginning, acting under an illegal levy, and without a standing which would permit him to question the plaintiff's actions or motives. I admitted evidence that plaintiff, after he had secured possession of the goods upon this writ, turned them over to his son, simply that you might give such fact whatever consideration it was worth in determining whether this first mortgage was or was not valid when it was made and received.

"Neither was the failure of the plaintiff to indorse upon the mortgage the amount, if any, which had been paid, any fraud in and of itself. It was not his duty to make any such actual indorsement. The amount remaining, if any, exceeded the appraised value of the property, and the dispute itself was not as to the amount remaining unpaid upon the mortgage, but whether the mortgage was valid at all or not. The testimony, however, on this point may be considered by you in determining whether the mortgage was ever valid or not.

"We therefore get down to the single point,—and the only point which you need consider,—was this first mortgage void as to creditors at the start, when it was given and received? Was this mortgage at that time taken by

the plaintiff, Mr. Devello W. Anderson, in good faith, to secure payment of a *bona fide* indebtedness? When the mortgage was given, George D. Anderson, the son, either owed the father practically the entire amount which plaintiff claims or nothing. There is no middle ground to the testimony on this point. If the son was actually owing the father, as a *bona fide* debt, all moneys which the father claims were put into this mortgage, then I charge you this mortgage was valid, and your verdict should be in favor of the plaintiff. If the son was not owing the father, as a *bona fide* debt, substantially the amount put into the mortgage, then the mortgage was fraudulent and void as to creditors, and your verdict should be for the defendant."

The jury rendered a verdict for the plaintiff.

We find no error in the charge against the defendant. The instructions were as favorable as he was entitled to.

The only evidence as to these loans came from the plaintiff and his son. Plaintiff testified positively as to the amounts and the dates, and from whom some of the money was obtained. The son corroborated his father. The only grounds on which the honesty of the transaction can be attacked are the facts that the father took no notes from his son, and no security at the time, as he was accustomed to do when he made loans to strangers, and the facts that the son gambled, kept no books, and was unable to give dates. If these were sufficient to cast doubts upon the *bona fides* of the transaction, that question was fairly submitted to the jury, and is settled against the defendant. The verdict established the fact also, under the evidence, that the value of the property was not equal to the amount secured by the first mortgage. It is very doubtful if there are any circumstances tending to establish fraud on the part of the plaintiff in taking the second mortgage. There was nothing legally or morally wrong in his advancing money, or agreeing to advance money, to secure a compromise, and in taking a mortgage to secure himself. He actually advanced money at the time, and I fail to find

upon the record any evidence that he did not do it in good faith.

It is argued, however, that because the full face of the mortgage was not due, the payment was not indorsed upon the mortgage on file, and plaintiff's counsel did not state to the defendant at the time of demanding possession the' amount unpaid, therefore the mortgage was void as to creditors. The obvious reply to this is that a chattel mortgagee is not required to indorse payments upon the mortgage, or a copy thereof, filed in the office of the township or city clerk. He is only required to file at the end of each year an affidavit of the amount unpaid. Nor is he obliged to volunteer such statement · to one who refuses to recognize his mortgage as valid for any sum, or who fails to ask the amount due thereon.

It is not conclusive of fraud that plaintiff did not foreclose his mortgage by advertisement, but permitted his son to sell at private sale, and account for the proceeds, which it appears was done in this case. The mortgage being valid, plaintiff was entitled to possession, and his security will not be destroyed by his failure to sell in the exact manner provided in the mortgage. The result of such disposition would be that, if the goods were worth more than the amount of his lien, he would be held to account for the surplus to those holding subsequent liens.

This disposal of the case renders it unnecessary to discuss the other questions raised.

Judgment affirmed.

The other Justices concurred.